691 So.2d 687 (1997)
In the Interest of E.C.B.
No. 29,725-JAC.
Court of Appeal of Louisiana, Second Circuit.
January 29, 1997.
Writ Denied; Stay Denied January 31, 1997.
*688 Snelling, Breard, Sartor by Wendy E.W. Giovingo, David C. McMillin, Monroe, for Appellant, Jason Kelly, Natural Father.
Jack Wright, Jr., Milton Dale Peacock, Monroe, for Appellee, Adoptive Parents.
Jackie Harrell, for State of Louisiana, Department of Social Services
Before MARVIN, C.J., and HIGHTOWER, BROWN, WILLIAMS and GASKINS, JJ.
BROWN, Judge.
An unwed 16-year-old mother duly surrendered her newborn child for adoption. The 18-year-old natural father executed an acknowledgment of paternity and after receipt of notice, opposed the adoption of his child. Following a hearing, the trial court terminated the natural father's parental rights. For the following reasons, we reverse the trial court's decision, find that the father has established his parental rights, declare that no adoption may be granted without his consent, and order the minor child to be placed in his legal custody.

FACTS
The baby was born on September 10,1996. The father (herein referred to as Jason) and mother of the child (herein referred to as Nichole) were both residents of Mississippi at the time of the child's conception.
Prior to the birth of her child, Nichole had been referred to Bethany Christian Services, an adoption agency in Baton Rouge, Louisiana. An employee of the agency sent a letter to Jason inquiring about his intentions. Thereafter, the baby was born in Baton Rouge and an agency worker talked to Jason about signing voluntary surrender papers. This employee testified that Jason indicated that he would sign the surrender papers. Jason, however, testified that he never agreed to sign the papers, but instead told the employee that he had to discuss the matter with his father. The trial court credited the testimony of the agency employee on this point; however, it is undisputed that Jason never signed the surrender papers and that after discussing the matter with his parents, he decided to object to the proposed adoption.
On September 16,1996, Nichole executed a voluntary surrender of her parental rights to the adoption agency. In the notarized act, Jason was named as the baby's father. As required by law, the agency notified Jason that he could oppose the adoption by filing a *689 written objection. Because the adopting couple resided in Ouachita Parish, the objection had to be filed in the Fourth Judicial District Court, Parish of Ouachita, within 15 days after receipt of the notice. The notice, which was dated October 2, 1996, followed the requisites of law and informed Jason as to what he must do to establish his parental rights and oppose the adoption.
Jason and his father testified that the decision to oppose the adoption was made by Jason. The father stated:
A. [Jason] made that decision. I gave him my advice of what I thought which we've always done in every ... in everything we've ever done. He's always come to me for my advice and I give it to him.
Q. What advice did you give to him in this case?
A. I said, `Son, that it is your ... that is your heart. That is part of you.' And I said, `If you give that baby up, you'll regret it to the last day you live. Right ... I said, cause right now, you know, he's eighteen and he can't think real straight I know because he's going through a lot of things, but I said, I know sooner or later he's going to regret it if he gives that baby up. I told him, I said, `I'll support you in any way financially ... I want you to finish college.' That's the reason I told him that if ... keep going to college I'll support that baby until he get's out of college and then on because I want him... that's what happened to me, I didn't get to go to college. I want him to finish his college education and I will support that baby any way I can until he gets through with his college education.
In the meantime, Jason's parents, on his behalf, had contacted the adoption agency. When it became apparent that Jason and his family would be unable to get the child without taking legal action, they hired an attorney who had Jason formally acknowledge the child. The acknowledgment was filed where the child was born, in East Baton Rouge Parish, as well as with the Louisiana Putative Father Registry.
On September 28,1996, Nichole executed a second affidavit surrendering the child to Jason and his father.[1] On October 22, 1996, Jason filed in the Fourth Judicial District Court an objection to the adoption seeking that his paternity be recognized and that he be given custody of the child. A hearing was held; Nichole did not testify.
At trial, Jason, his father, mother, aunt and grandfather all testified in support of his position. Jason, a college freshman and baseball player, testified that he planned to quit the baseball team and transfer to a branch of the college closer to his father's home. He also testified that he would enroll as a part-time student and obtain employment to help support his child. He testified that he could give his daughter the love and affection she needs and that he could think of no obstacles that would prevent him from being a good father. Generally, he would do whatever was necessary.
Jason's father fully supported his son's decision and was both ready and able to make the financial and other commitments necessary to give that support. There was a stipulation to the effect that Jason's father's home was a "good home."
At the conclusion of the hearing, the trial court set forth the following reasons for terminating Jason's parental rights:
I find that when he (Jason) first learned of the pregnancy ... that he obviously doubted or had doubts that he was in fact the father of the child.... I think the problem here is that I have an eighteen year old who is immature. I find that for a number of reasons. Number one, I find that it was very poor judgment whether him to have been seventeen or eighteen at the time that this child was conceived to have a sexual relationship with a fifteen or sixteen year old child outside marriage.... Also, I find that this young man is trying to get ... apparently trying to get a college education, plays baseball. Also, I base his immaturity upon the fact that I do believe that he orally, initially indicated that he was going to agree to this adoption.... I think he told [the adoption *690 agency employee] exactly what she said,... All of these actions taken together indicate to me ... gross immaturity on the part of the father. I also find ... that the father's family is committed to those responsibilities (raising the child) but I do not find that the father himself is committed to those responsibilities because I do not believe that the father realizes the significance of this decision that he's making. And I also find that this decision to contest or oppose this adoption is based upon what your family wants, not what you want.... Also, the fact that you are eighteen years of age, that you are in school, that you are playing ball, you're not going to have the time to commit to this child that you should. Your family is the one that's going to step in and fill in the gap.... I think that you are sincere in your belief that you want the child but I do think that you have received pressure from your family to take this action ...

DISCUSSION
It is well-settled that a court of appeal may not set aside a trial court's findings of fact in the absence of "manifest error," which in its simplest terms means "clearly wrong." Where there is conflicting testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even when the appellate court may feel that its own evaluations and inferences are as reasonable as those of the trial court. Rosell v. ESCO, 549 So.2d 840 (La. 1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Nevertheless, when an appellate court finds that a reversible error of law or manifest error of material fact has been made in the trial court, the reviewing court is required to redetermine the facts de novo from the entire record and render a judgment on the merits. Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975).
After affording the trial court's factual findings the full measure of discretion, we find error in the trial court's ultimate conclusion to terminate Jason's parental rights based on his immaturity and lack of commitment.
This is an adoption proceeding between private litigants and the law has been set forth in In the Matter of R.E., 94-2657, 94-2596, 94-2663 (La. 11/09/94) 645 So.2d 205. Under the statutory scheme implementing both federal and state constitutional protections, an unwed father is entitled to notice and a hearing at which he has an opportunity to demonstrate his biological link and substantial relationship with the child. La.Ch.C. arts. 1130-1143. An unwed father does not have a fully established right to a parental relationship until he demonstrates his fitness and commitment. In the Matter of R.E., supra; In re Adoption of B.G.S., 556 So.2d 545 (La.1990).
In the instant case, Jason was correctly notified and granted a hearing in accordance with constitutional due process.
In In re Adoption of B.G.S., supra, our supreme court observed that in Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), the United States Supreme Court held that a state could not presume that unmarried fathers in general and the petitioner in particular were unsuitable and neglectful parents; rather, parental unfitness must be established on the basis of individualized proof. The court opined further that if the father appears at the hearing and demonstrates that he is fully committed to his parental responsibilities and has grasped the opportunity to commence a relationship with his child, the court must uphold his parental rights, vacate the surrender and dismiss the adoption.
By timely opposing the adoption, formally acknowledging his child and filing in the Louisiana Putative Father Registry, Jason demonstrated affirmative efforts to establish a parental relationship with his child. These were concrete steps timely taken to grasp the opportunity to be a father and demonstrated his commitment to parental responsibility through his coming forward to participate in the rearing of his child. Furthermore, these actions were taken within the narrow window of time allowed by law.
Neither the notice of adoption nor the notice of opposition provisions tell an alleged father that he must prove his fitness; however, *691 the provisions of La.Ch.C. art. 1138(A) require the court to consider the alleged father's fitness. A father's fitness vel non has a well-defined meaning in our law. Under the provisions of La.Ch.C. art. 1003(10), an unfit parent is one:
(a) who has abused a child by inflicting physical or mental injury which causes severe deterioration to the child, or has sexually abused, exploited, or overworked a child to such an extent that his or her health, or moral or emotional well-being is endangered.
(b) who has consistently refused to provide reasonably necessary food, clothing, appropriate shelter, or treatment either by medical care or other health care services in accordance with the tenants of a well-recognized religious method of healing with a reasonable proven record of success. Financial inability alone shall not constitute grounds for termination of parental rights.
(c) whose medical or emotional illness, mental deficiency, behavior or conduct disorder, severe physical disability, substance abuse, or chemical dependency makes the parent unable or unwilling to provide an adequate permanent home for the child at the present time or in the reasonably near future based upon expert opinion or based upon an established pattern of behavior.
The first two parts of the statutory definition of an unfit parent, subsections (a) and (b), are inapplicable to a parent, like Jason, who has not yet had an opportunity to develop a relationship with his child. Thus, without evidence that Jason suffered some medical or emotional illness, mental deficiency, etc., that made him unable or unwilling to provide an adequate permanent home for the child, subsection (e), a prima facie showing of Jason's fitness would be made simply by denying any such problems.
Accordingly, we hold that by his formal actions herein, Jason has demonstrated his affirmative efforts to establish a parental relationship with his daughter. His formal acknowledgment of the child was sufficient to establish his obligation to support her without the necessity of obtaining a judgment of paternity. La.C.C. art. 203. Jason's filing with the Putative Father Registry made him the child's presumed father; no one in this case has actually ever disputed his paternity. These were concrete actions which, along with his filing of an opposition to the adoption, demonstrated that Jason had timely grasped his opportunity to be a father.
Furthermore, there was no evidence whatsoever to show that Jason was unfit for parental responsibilities and his, as well as his family's, testimony about his ability to give love and affection, etc., affirmatively demonstrated his fitness. Moreover, Jason's fitness, combined with his affirmative acts taken in the narrow window provided by law, demonstrated his potential to make a valuable contribution to the child's development. Jason therefore satisfied every "element" of his burden of proof by a preponderance of the evidence.
At this point, the burden of going forward shifted to the adoption agency, which then had to show that Jason was unfit and/or uncommitted to parental responsibilities. As already discussed, there was no evidence to show unfitness on the part of Jason. Thus, we are left to determine whether the trial court erred in finding that Jason was not committed to parental responsibilities.
The trial court based its decision on its belief that Jason did not realize the "significance of this decision" and upon the court's belief that it was Jason's father who was committed to raising the child. The court found that Jason did initially agree to sign the voluntary surrender, but changed his mind because of "pressure" from his family. The court also noted that Jason was 18 years old, in school and playing baseball. Therefore, the court concluded that he would not have the proper time to commit to the child. Significantly, the court stated that it thought Jason was sincere in his belief that he wanted his child. However, the court concluded that Jason had changed his mind on this point after receiving pressure from his family.
Initially, we observe that the trial court was clearly wrong in basing its decision upon the conclusion that Jason would not have adequate time to commit to his child. There is no presumption in our law that a *692 young man beginning college cannot adequately devote himself to a child; however, this is the effect of the trial court's reasoning. Young parents, even older parents, often do not have all the time they would like to spend with their children. In this case, the evidence showed that Jason would have the time to commit to his daughter. Jason testified that he was quitting the baseball team and getting a job in order to help support his daughter.
We also conclude that the trial court erred in focusing on Jason's initial decision to agree to the adoption. The law requires a written surrender of parental rights. The fact that the court found that Jason was initially inclined to give up his parental rights shows only that the matter was given serious consideration. Jason refused to sign the surrender and within the time allowed by law, opposed the adoption. One logical reason for the written surrender required by La.Ch.C. art. 1122 is to make sure that the surrendering parent has been informed of and has considered the effects of the choice.
As for the court's finding that Jason changed his mind in response to "pressure" from his parents, we make two observations. First, we find nothing wrong with either the counsel given to Jason by his father or his family's desire to support Jason and his daughter. On this record, we conclude that older family members should be commended for their efforts to assist and advise an 18-year-old adult to assume responsibility for a child he has fathered out of wedlock. We do not condemn such advice as "pressure," but would refer to it as "counseling."
Second, and more significantly, the court's finding that Jason was sincere in wanting his child severely undermines the trial court's decision about his commitment to responsibility. Because Jason was sincere, his commitment was genuine, even if this commitment was prompted by the strong advice of his father. This is not a case of duress or lack of capacity. The trial court's mere belief that Jason did not realize "the significance of this decision" is not enough. We observe that all potential parents, whether fathers or mothers, should but do not always realize the significance of a decision to have children.
On this record, we agree that Jason was sincere in accepting parental responsibility once his child was born, notwithstanding his initial equivocation about paternity and the "significance" of his decision.

CONCLUSION
For the reasons set forth above, the judgment of the trial court is reversed; we hereby declare that no adoption can take place without the consent of Jason; we hereby declare that the surrender executed by Nichole is dissolved; and we order the child to be placed in Jason's legal custody. Costs are assessed to appellee.
REVERSED AND RENDERED.
HIGHTOWER, J., dissents with reasons.
HIGHTOWER, Judge, Dissenting.
The trial judge in this cause appropriately and conscientiously applied the standards enunciated in the Matter of R.E., 645 So.2d 205 (La.1994). I do not find his decision to be clearly or plainly wrong, and, accordingly, would affirm.
I respectfully dissent.
NOTES
[1] Jason's parents were divorced and both had remarried.