754 So.2d 425 (2000)
In the Matter of H.M.M.
No. 33,766-JAC.
Court of Appeal of Louisiana, Second Circuit.
March 7, 2000.
Writ Denied May 12, 2000.
*426 Davis & Saybe by Michael H. Davis, Alexandria, Counsel for Appellant, R.T.O.
Alex Rubenstein, Shreveport, Counsel for Appellee, H.M.M.
Walker, Passman & Michiels by Henry Gregory Walker, Jr., New Orleans, Counsel for Appellees, A.B.M. and Volunteers of America of North Louisiana.
Roy L. Beard, Shreveport, Counsel for Appellee, Volunteers of America of North Louisiana.
Before WILLIAMS, GASKINS and CARAWAY, JJ.
WILLIAMS, Judge.
This appeal is from a juvenile court judgment finding that the biological father, who opposed the release for adoption of his infant, failed to show that he has manifested a substantial commitment to his parental responsibilities and that he is a fit parent of his child. Finding no manifest error in the trial court's determination, the judgment terminating the father's parental rights is affirmed.
As a result of a relationship with R.T.O., A.B.M. became pregnant. Ultimately rejecting an abortion as an alternative, they considered adoption and sought information from the Volunteers of America of North Louisiana ("VOA"), a duly licensed child-placement agency. Over several months, the couple discussed many alternatives, including placement for adoption with the maternal grandmother. Ultimately, the couple determined that adoption by parents selected by VOA was the best course. However, after the birth of the child, and with the support of his parents, R.T.O. opposed the surrender of his child, a boy, and sought custody.[1] After a trial, the court found that R.T.O. had failed to meet his burden under La. Ch.C. art. 1138, and terminated his parental rights. This appeal followed.
Since In re Adoption of B.G.S., 556 So.2d 545 (La.1990) the courts of this state have recognized that unwed fathers have protected legal interests in maintaining relationships with their offspring.
Although an unwed father's biological link to his child does not guarantee him a constitutional stake in his relationship with that child, such a link combined with a substantial parent-child relationship will do so. As the [United States Supreme] Court stated in Lehr v. Robertson:

When an unwed father demonstrates a full commitment to the responsibilities of parenthood by `coming forward to participate in the rearing of his child,' ... his interest in personal contact with his child acquires substantial protection under the Due Process Clause. At that point it may be said that he `act[s] as a father toward his children.'....
The significance of the biological connection is that it offers the natural father an opportunity that no other male possesses to develop a relationship with his offspring. If he grasps that opportunity and accepts some measure of responsibility for the child's future, he may enjoy the blessings of the parent-child relationship and make uniquely valuable contributions to the child's development.
463 U.S. [248] at 261-62, 103 S.Ct. [2985] at 2993, 77 L.Ed.2d [614] at 626-27 [(1983)], quoting Caban v. Mohammed, 441 U.S. at 392, 389 n. 7, 99 S.Ct. at 1768, 1766 n. 7, 60 L.Ed.2d at 307, 305 n. 7 (emphasis added).
*427 In re Adoption of B.G.S., 556 So.2d 545, 550 (La.1990).

APPLICABLE LAW
Presently, La. Ch.C. art. 1138, delineates the showing that must be made to oppose an adoption and establish parental rights, as follows:
Art. 1138. Hearing of opposition to adoption; establishment of parental rights
A. At the hearing of the opposition, the alleged or adjudicated father must establish his parental rights by acknowledging that he is the father of the child and by proving that he has manifested a substantial commitment to his parental responsibilities and that he is a fit parent of his child.
B. Proof of the father's substantial commitment to his parental responsibilities requires a showing, in accordance with his means and knowledge of the mother's pregnancy or the child's birth, that he either:
(1) Provided financial support, including but not limited to the payment of consistent support to the mother during her pregnancy, contributions to the payment of the medical expenses of pregnancy and birth, or contributions of consistent support of the child after birth; that he frequently and consistently visited the child after birth; and that he is now willing and able to assume legal and physical care of the child.
(2) Was willing to provide such support and to visit the child and that he made reasonable attempts to manifest such a parental commitment, but was thwarted in his efforts by the mother or her agents, and that he is now willing and able to assume legal and physical care of the child.
C. The child and the legal custodian may offer rebuttal evidence limited to the issues enumerated in Paragraphs A and B of this Article.
D. If the court finds that the alleged or adjudicated father has failed to establish his parental rights, it shall decree that his rights are terminated.
Although apparently no genetic testing has been undertaken, all parties agree that R.T.O. is the biological father of H.M.M. He executed an authentic act of acknowledgment and has thus satisfied that requirement of La. Ch.C. art. 1138(A).
The biological father has the burden of proof in this case, and the required elements must be shown by a preponderance of the evidence. In Matter of R.E., 645 So.2d 205 (La.1994); In re Adoption of B.G.S., 556 So.2d 545 (La.1990).
Our standard of review in this case is the "manifest error" standard.
It is well-settled that a court of appeal may not set aside a trial court's findings of fact in the absence of "manifest error," which in its simplest terms means "clearly wrong." Where there is conflicting testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even when the appellate court may feel that its own evaluations and inferences are as reasonable as those of the trial court. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Nevertheless, when an appellate court finds that a reversible error of law or manifest error of material fact has been made in the trial court, the reviewing court is required to redetermine the facts de novo from the entire record and render a judgment on the merits. Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975). In Interest of E.C.B., 691 So.2d 687 at 690, 29,725 [(La.App. 2 Cir.. 1/29/97)].

DISCUSSION
Having now established the legal pattern by which we must measure this case, we now move to the more problematic area, the testimony adduced and the factual *428 and legal inferences to be drawn therefrom.
The appellant, R.T.O., is a twenty-eight-year-old man who finished high school, briefly attended college, and then served honorably in the United States Marine Corps before his discharge resulting from a diagnosis of a seizure disorder. He receives military pension benefits as a result of the discharge. He was also diagnosed as having a bipolar disorder while in the military, and the evidence adduced indicates he has sought benefits from the military related to that determination. The testimony of the medical experts indicates very strongly that the "bipolar disorder" diagnosis was in error, and resulted from an inadequate evaluation of R.T.O. by a military physician. The testifying medical experts found no evidence of a bipolar disorder, and indicated that such a diagnosis could not be based on a single interview or examination. Further, the experts testified that the very rapid resolution of the symptoms would indicate that no bipolar disorder existed. However, there was testimony that the appellant may have a less serious or disabling condition, a cyclothymic disorder, characterized by mood swings of less severity.
The evidence further indicates that the appellant, although twenty-eight years old, is immature and somewhat irresponsible, although he is now gainfully employed by his father in the plant nursery business. The appellant's financial condition, while somewhat limited, does not appear to be inadequate to meet his own needs and those of the child. As stated, he is employed and, at present, has military pension benefits. However, the appellant's employment history could be characterized as spotty, he having had several jobs and none for any extended period of time. Maintenance of a job and the income it provides is an important, if not crucial role for any parent, and especially so for a single parent.
At trial, much was made of R.T.O.'s maintenance of a daily journal, or diary, and of the entries therein, which were "free association" type entries. Although the questioned entries may seem odd, as many of our own private thoughts and feelings might be if brought under close examination in a courtroom, the diaries indicate no manifest mental illness or impairment reflecting on the appellant's fitness as a parent. However, there was a relevant inquiry into diary entries in which the appellant "prioritized" matters in his life. Appellant's list of priorities, made during the pregnancy, while the appellant was focused on adoption as the best course of action, and prior to his decision to seek custody, does not indicate that the assumption of parenthood and the rearing of his child was a priority in his life.
We perceive the evidence adduced about the appellant's reaction to news of the pregnancy as evidencing a responsible attitude toward this unplanned pregnancy, even if the trial court found that it did not show a "substantial commitment to his parental responsibilities." He accompanied the mother on her doctor visits and attended a birthing class with her, despite the fact that they were estranged at the time. He manifested an interest in seeking the best alternative for the child, and when the mother indicated her intention not to raise the child, he sought information on adoption. While we recognize the appellant's responsibility in acknowledging his role in and responsibility for the pregnancy, this fact does not clearly show a "substantial commitment to his parental responsibilities." Rather than making such a commitment, he clearly persisted in his intention to allow the adoption until the very last moment, before raising an opposition.
Without question, R.T.O. did not provide financial support of the mother during her pregnancy, did not contribute to the payment of the medical expenses of pregnancy and birth, or consistently contribute to the support of the child after birth. According to R.T.O.'s testimony at trial, he was committed to other things *429 prior to H.M.M.'s birth, including his girlfriend, his cousin's wedding and the play in which he was involved. R.T.O. also testified that he did not make any effort to obtain full-time employment to assist with the expenses of the pregnancy or to save money in the event that he would be required to rear the child.
Our examination of the record shows that there was conflicting evidence on the issues of a substantial commitment to parental responsibilities and fitness to parent. However, we conclude that the trial court's evaluations of credibility and inferences of fact were reasonable, and thus should not be disturbed upon review. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).

CONCLUSION
For the foregoing reasons, the judgment of the trial court terminating R.T.O.'s parental rights is affirmed. All costs of this appeal are assessed to the appellant, R.T.O.
AFFIRMED.
NOTES
[1] A.B.M., the biological mother, executed a voluntary act of surrender on September 13, 1999.